UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PNC BANK NATIONAL ASSOCIATION,
successor to RBC Bank (USA)

    Plaintiff,

v.                                            Case No:  2:13-cv-12-Ftm-99SPC

ORCHID GROUP INVESTMENTS,
L.L.C., LYNNE W. WASHBURN,
KRISTEN FLAHARTY, PATRICK
FLAHARTY and JOHN P. ARNOLD, JR. ,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Plaintiff, PNC Bank's Motion for Default Final Judgment as to Defendant Orchid Group Investments, LLC. (Doc. #30) filed on April 15, 2013. The Defendant Orchid Group Investments, LLC did not file a response in opposition and the time to do so has expired.

FACTS

The Plaintiff filed its Complaint on January 8, 2013, alleging that Orchid Group Investments (Orchid) defaulted on a loan given by PNC Bank as successor to RBC Bank.  The Loan was secured by a piece of real property owned by Orchid and secured by a warranty deed on June 21, 2005.  The subject property is located in Lee County, Florida.  The Defendant Orchid entered into an agreement with Community Bank of Naples who loaned the Defendant the sum of $3,965,000.00.  The Loan was secured by a promissory note (Note) for $3,965,000.00 given by Orchid.  The Note on the Loan was set to mature on June 20, 2007, and the Defendant

agreed to make consecutive monthly installments of interest beginning on July 20, 2005, up to the maturity date.

The Loan was renewed on August 20, 2007, for $3,965,000.00 with a maturity date of August 20, 2008. As with the prior loan, the Defendant agreed to make monthly interest payments on the loan until it matured in August of 2008.

In 2008, the Community Bank of Naples merged with RBC Bank. At that time, Orchid entered into a Change in Terms Agreement which increased the principal amount of the loan to $3,986,683.02. The maturity date on the Note was extended to December 11, 2009.

The personal Guarantors of the Loan executed and delivered a separate Commercial Guaranty dated December 12, 2008, to RBC bank. Pursuant to the 2008 Commercial Guaranty, each of the Guarantors guaranteed payment of the Loan which includes, but is not limited to principal and interest on the loan, collection costs and attorney's fees, and payment and performance of all of Orchid's obligations.

On January 26, 2009, Orchid and RBC Bank entered into a Change in Terms Agreement. The 2009 Change Agreement changed the principal amount to $3,980,780.55 and extended the maturity date to December 11, 2009. To secure the 2009 Note, as modified, RBC Bank and Orchid entered into a Mortgage Future Advances on January 26, 2009 on the property that was the subject of the original 2005 Loan. The 2009 Mortgage was recorded with the State of Florida on March 4, 2009.

On July 10, 2010, RBC Bank and Orchid entered in a Change in Terms Agreement, which extended the maturity date on the Loan to August 11, 2010. Again on January 14, 2011, the borrower executed and delivered to RBC Bank a Loan Agreement, renewing the Loan in the amount of $3,730,781.00. The 2011 Note, amended and renewed the 2007 Renewal Note. The

2011 Note executed on January 14, 2011, amended and restated the 2009 Mortgage and deleted the original property described in the 2005 Mortgage and replaced it with another parcel described in the Complaint. (Doc. # 1, ¶ 44). The Guarantors also entered into the 2011 Loan Agreement to guarantee the loan. The 2011 Note matured on January 31, 2013. Pursuant to the 2011 Note, Orchid agreed to pay interest installments until the 2013 maturity date when all outstanding payments on the 2011 Loan would be paid.

On March 2, 2012, RBC Bank merged into PNC Bank. PNC Bank then became the surviving entity and by virtue of the merger succeeded to all rights and obligations with respect to the 2011 Loan. Orchid failed to make a payment on August 1, 2012 and has not made a payment since that time. On September 20, 2012, the Plaintiff informed Orchid that it was in default and accelerated the Loan. To date, the Plaintiff states that Orchid has failed to make any payments or arrangements to pay the Loan.

On January 23, 2013, Orchid was served process with the instant Complaint. (Doc. # 8). Orchid failed to file an answer or otherwise respond to the Complaint and on March 11, 2013, the Court entered a Clerk's Default against Orchid. To date Orchid has still failed to file an answer or otherwise respond to the Complaint and the Plaintiff now moves for entry of a default judgment against Orchid.

DISCUSSION

The Plaintiff moves for a default judgment against Orchid, foreclosing any interest Orchid has in the security property and for breach of the Note in the amount of $4,442,393 43. The Plaintiff asks for a judgment in the amount of the Loan plus interest as well as for attorney's fees and costs.

*(1) Default Judgment*

A district court may enter a default judgment against a properly served defendant who fails to defend or otherwise appear pursuant to Federal Rule of Civil Procedure 55(b)(2). ABS-SOS Plus Partners Ltd. v. Vein Associates of America, Inc., WL 5191701 *1-2 (M.D. December 10, 2008) (citing DirecTV, Inc. v. Griffin, 290 F. Supp.2d 1340, 1343 (M.D. Fla.2003). In this instance, the Defendant was properly served on January 23, 2013. (Doc. # 8). The Plaintiff moved for a clerk's default which was subsequently entered on March 11, 2013. (Doc. # 22). To date the Defendant has failed to answer, respond or otherwise make an appearance in this case. Having determined that the Defendant has failed to answer or otherwise defend against the Complaint, the Court must now look to see if the allegations in the Complaint provide a sufficient legal basis for the entry of a default judgment.

A court may enter a default judgment only if the factual allegations of the complaint, which are assumed to be true, provide a sufficient legal basis for such entry. Nike, Inc. v. Austin, WL 3535500 *1 -2 (M.D. Fla. October 28, 2009) (citing Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir.1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). Therefore, in considering a motion for default judgment, a court must "examine the sufficiency of the allegations in the complaint to determine whether the plaintiff is entitled to" a default judgment. Nike, Inc., WL 3535500 at *1 - 2 (citing Fid. & Deposit Co. v. Williams, 699 F. Supp. 897, 899 (N.D.Ga.1988)).

In this instance, the Plaintiff has established that Orchid accepted the Loan from PNC Bank as successor to RBC and failed to repay the Loan as agreed. Under the terms of the 2011 Loan, Orchid was to make monthly installment payments on the Loan and completely pay the Loan off by January 31, 2013. Orchid stopped making the monthly payments on August 1, 2012,

and has not made any payments since that time nor answered the allegations in the Complaint. Thus, the Complaint contains well pleaded allegations that Orchid borrowed $3,730,781.00 from PNC Bank and defaulted on the Loan and has, to date, failed to cure the default. Accepting the Plaintiff's allegations as true, the Court must respectfully recommend that a default judgment should be entered against the Defendant Orchid Group Investments, LLC.

*(2) Damages*

The Plaintiff moves the Court to foreclose any interest Orchid may have in the mortgaged property as set forth in Count I of the Complaint and for breach of the Note in the amount of $4,442,393.43 for principal, interest and late fees as set forth in Counts I, II and III of the Complaint.

Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default; rather, the Court determines the amount and character of damages to be awarded. Whole Space Industries, Ltd. v. Gulfcoast Intern. Products, Inc., 2009 WL 2151309 *3 (M.D. Fla. July 13, 2009) (citing Wallace v. the Kiwi Group, Inc., 241 F.R.D. 679, 681 (M.D.Fla.2008); Miller v. Paradise of Port Richey, Inc., 75 F.Supp.2d 1342, 1346 (M.D.Fla.1999); Fed. R. Civ. P. 55(b)(2). If a default judgment is warranted, the Court may hold a hearing for purposes of assessing damages. Wallace, 247 F.R.D. at 681 (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir.1997) (citing Federal Rule of Civil Procedure 55(b)(2)). However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages. Wallace, 247 F.R.D. at 681; See SEC v. Smyth, 420 F. 3d 1225, 1231 (11th Cir. 2005) (holding that when essential evidence regarding damages is before the court, a hearing on damages may not be necessary); United Artists Corp. v. Freeman, 605 F. 2d 854, 857 (5th Cir. 1979) (holding that "A

judgment by default may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one capable of mathematical calculations.").

In this instance, the Plaintiff provided proof of the Loan amount and established that Orchid agreed to the amount and terms of the Loan. (Doc. # 1, Ex. 22). The Loan amount under the agreement at the date it was signed was $3,730,780.55. (Doc. # 1, Ex. 22, p. 11). The Mortgage agreement regarding the Loan to Orchid states "[t]he credit facility is in an aggregate principal amount up to $3,980,781.00 (Facility Amount) and is evidenced by a promissory note or promissory notes dated of even date herewith in the original aggregate principal amount up to the Facility Amount, from [Orchid] to Bank . . . ." (Doc. # 1, Ex 22, p. 11). The Plaintiff seeks interest on the outstanding Loan as well. The Plaintiff states the remaining principal, of $3,730,780.55, plus interest amounting to $499,924.57, and late fees of $194,729.56 totals $4,425,434.68, plus per diem interest at eighteen (18%) percent or $1,865.39.

Here, the Plaintiff has established the amount of the damages with essential mathematical calculable evidence from the Mortgage Agreement which was sworn, signed by Orchid and then subsequently filed with the State of Florida. Thus, it is respectfully recommended that the damages in the amount of $4,425,434.68 should be entered against the Defendant Orchid.

Further, as part of the 2011 Mortgage Agreement securing the Loan, Orchid agreed the Plaintiff could foreclose on the collateral and sell the collateral to aid in satisfying Orchid's obligations to pay the indebtedness specified in the Mortgage Agreement under the Loan. Specifically, the 2011 Mortgage Agreement states

> In furtherance of the provisions in the above paragraph of this Section and in order to provide Bank the widest possible discretion permitted by law with respect to aspects of any sale or sales—which Mortgagor agrees Bank is entitled, in the event of any sale or sales under this Mortgage pursuant to any order in any judicial proceedings or otherwise, the Land and all of the other Collateral constituting real property may be sold as an entirety or in separate parcels at one

> or more sales and in such manner or order as Bank in its sole discretion may elect and if Bank so elects, Bank may sell the Personalty and other Collateral constituting personal property covered by this Mortgage with the Land and all of the other collateral constituting real property, or at one or more exercises of the rights and remedies herein granted will not extinguish nor exhaust such rights and remedies until the entire Collateral is sold or the Obligations and other indebtedness and obligations secured hereby are paid in full. . . .

(Doc. # 1 Ex. 22, Foreclosure Clause, pp.16-17). The Mortgage was signed and sworn to by Orchid agreeing that the Loan could be paid off by the foreclosure and sale of the collateral property defined by the Loan agreement and the 2011 Mortgage Agreement. The Mortgage was sworn, signed, and filed with the State of Florida demonstrating the amount of the Loan and that the property could be foreclosed and sold to cover Orchid's obligations on the Loan.

The Plaintiff has provided the Court with sufficient proof of the value of the Loan and of Orchids agreement that the subject property could be foreclosed upon and sold to pay off its obligations under the terms of the Loan. Therefore, it is respectfully recommended that the Plaintiff should be allowed to foreclose on the collateral property and sell, auction, or otherwise dispose of the collateral property in order to satisfy Orchid's obligation under the Loan.

*(3) Attorney's Fees and Costs*

The Plaintiff also asks for attorney's fees and costs for bringing the instant action. Plaintiff states that it has incurred $14,872.50 in attorney's fees and $2,086.25 in costs.

In evaluating Plaintiff's request for attorney's fees, the court uses the lodestar, which is the number of reasonable hours spent working on the case multiplied by a reasonable hourly rate. Lehman Bros. Holdings Inc. v. Key Financial Corp., WL 3879499 *5 -6 (M.D. Fla. August 12, 2011) (citing Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir.1994) (per curiam). The court must also determine whether an adjustment to the lodestar is necessary based on the results obtained. See ACLU of Ga. v. Barnes, 168 F.3d 423, 427 (11th Cir.1999). "[T]he fee applicant

bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Lehman Bros. Holdings Inc., WL 3879499 at *5 -6 (citing (Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The fee applicant also bears the burden of producing "satisfactory evidence that the requested rate is in line with prevailing market rates." Lehman Bros. Holdings Inc., WL 3879499 at *5 -6 (citing Norman v. Hous. Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir.1988)). The court may consider direct evidence of rates for similar services or opinion evidence about rates as well as its own expertise and judgment. Lehman Bros. Holdings Inc., WL 3879499 at *5 -6.

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.' " Lehman Bros. Holdings Inc., WL 3879499 at *5 -6 (citing Villano v. City of Boynton Beach, 254 F.3d 1302, 1305 (11th Cir.2001) (quoting Hensley, 461 U.S. at 436)). Further, the court itself is "an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Lehman Bros. Holdings Inc., WL 3879499 at *5-6 ;Norman, 836 F.2d at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir.1940)).

In this instance, the Plaintiff did not provide the Court with sufficient information to make a determination regarding attorney's fees and costs.  The hours are not separated out from hours spent prosecuting Orchid and hours expended on the other Defendants still remaining in this action.  The Affidavit submitted by Plaintiff's Counsel, Carrie Ann Wozniak, only states that the attorney's fees are for hours spent representing the Plaintiff in this matter. (Doc. # 30, Ex. 2). There is not sufficient explanation of what the hours were expended on Orchid.  The Plaintiff only supplies the Court with a statement as to what hours each attorney and staff member said

8

they worked on this case without further explanation.  As such, the Court cannot at this time make a determination regarding attorney's fees.

Similarly, the Plaintiff asks for $2,086.25 in costs, however, the costs are not detailed nor listed as to how the funds were expended.  Twenty eight U.S.C. § 1920 reads in pertinent part:

> [a] judge or clerk of any court of the United States may tax as costs the following:
> (1) Fees of the clerk and marshal;
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and copies of papers necessarily obtained  for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.
>
> A bill of costs shall be filed in the case and, upon allowance, included in the judgment decree.

While the Plaintiff is the prevailing party in this action and entitled to attorney's fees and costs, the information presented to the Court at this time is insufficient for the Court to make a determination regarding the amounts for attorney's fees and costs.  Thus, it is respectfully recommended that the Court deny without prejudice the Motion for Attorney's Fees and Costs and grant leave to the Plaintiff to supply the Court with detailed records on what hours were spent prosecuting Orchid and a detailed accounting of how the cost funds were spent.

 Accordingly, it is now

**RECOMMENDED:**

The Plaintiff, PNC Bank's Motion for Default Final Judgment as to Defendant Orchid Group Investments, LLC. (Doc. #30) should be **GRANTED in part and DENIED without prejudice in part.**

- Default Judgment should be **GRANTED** in favor of the Plaintiff PNC Bank against the Defendant Orchid Group Investments, LLC.

- Damages should be awarded against Orchid Group Investments, LLC. in the principal amount of **$3,730,780.55**, plus interest amounting to **$499,924.57**, and late fees of **$194,729.56** for a total of **$4,425,434.68**, plus per diem interest at eighteen (18%) percent or **$1,865.39.**

- Ruling on the Plaintiff, PNC Bank's Motion for Attorney's Fees and Costs against the Defendant Orchid Group Investments, LLC. should be **DENIED without prejudice.** The Plaintiff should be given leave to submit detailed records containing the hours spent on prosecuting Orchid and a detailed submission of costs in compliance with 28 U.S.C. § 1920.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this 10th day of May, 2013.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  All Parties of Record