UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PNC BANK NATIONAL ASSOCIATION,
successor to RBC Bank (USA),

       Plaintiff,

v.                                 Case No:  2:13-cv-12-FtM-38CM

ORCHID GROUP INVESTMENTS,
L.L.C., LYNNE W. WASHBURN,
KRISTEN FLAHARTY, PATRICK
FLAHARTY and JOHN P. ARNOLD,
JR.,

       Defendants.

_____/

### ORDER[1]

      This matter comes before the Court on Plaintiff PNC Bank's Motion for Final Summary Judgment (Doc. #59) filed on December 13, 2013.  Defendants Orchid Group Investments, LLC, Washburn, and Arnold's Response to the Plaintiff's Motion for Final Summary Judgment (Doc. #64) was filed on January 15, 2014.  Defendants Patrick Flaharty and Kristen Flaharty's Opposition to Plaintiff's Motion for Final Summary Judgment and Motion to Strike (Doc. #65) was filed on January 15, 2014.  Plaintiff also filed a Response in Opposition to Defendant Flahartys' Motion to Strike (Doc. #67), which

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

the Flahartys have moved to strike (Doc. #73) arguing that the brief is actually a reply brief filed by the Plaintiff without leave of court.   The Flaharty Defendants further argue that the "Second Knaus Affidavit" filed by Plaintiff in support of summary judgment, should be stricken because it is untimely.   For the reasons stated below, PNC Bank's Motion for Summary Judgment is denied.   Further, the Flaharty Defendant's Motion to Strike is denied without prejudice.

## BACKGROUND

The Plaintiff's initial Verified Complaint was filed in this Court on January 8, 2013, based upon diversity jurisdiction and contained counts for Mortgage Foreclosure against all Defendants (Count I); Foreclosure of Security Interest in Leases and Rents against all Defendants (Count II); Breach of Note against Borrower (Count III); and Breach of Guaranty Agreements by multiple guarantors (Counts IV-VII).   (Doc. #1).   Upon initial review of the Complaint the Court found that the Plaintiff had failed to properly allege diversity jurisdiction and accordingly dismissed the Complaint without prejudice and allowed Plaintiff to amend.   (Doc. #36).   On July 2, 2013, Plaintiff filed its Verified Amended Complaint to Foreclose Mortgage and for Other Relief, containing the same counts.   (Doc. #37).   Thereafter Defendants filed answers to the Amended Complaint and the Flaharty Defendants filed a crossclaim against co-guarantor Defendants Lynne W. Washburn and John P. Arnold for contribution.   (Doc. #44).   Plaintiff filed the instant Motion arguing that it is entitled to summary judgment on all counts.

## STANDARD

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a

matter of law.  Fed. R. Civ. P. 56(c).  An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 U.S. 2505, 91 L. Ed. 2d 202 (1986).  Similarly, an issue is material if it may affect the outcome of the suit under governing law.  Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party.  Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999).  Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial."  Demyan v. Sun Life Assurance Co. of Canada, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)).  Failure to show sufficient evidence of any essential element is fatal to the claim and the Court should grant the summary judgment.  Celotex, 477 U.S. at 322-23.  Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied.  Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992).  "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a

3

genuine issue of material fact, then the court should not grant summary judgment."  Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

## FACTS

The Court finds the following undisputed summary judgment facts:  On or about June 21, 2005, Community Bank of Naples, N.A. loaned the sum of $3,965,000.00 to Borrower (the "Loan").  (Copy attached to Verified Amended Complaint at Doc. #37, ¶17).  In order to evidence the Loan, on or about June 21, 2005, Borrower executed and delivered to Community Bank of Naples, N.A. a Promissory Note (the "2005 Note") in the principal amount of $3,965,000.00.  (Doc. #37, ¶18).  A true and correct copy of the 2005 Note is attached to the Verified Amended Complaint as Exhibit 2.  The 2005 Note provided for the loan to mature on June 20, 2007 (the "Maturity Date").  (Doc. #37 ¶9).  Pursuant to the Note, Borrower agreed to make consecutive monthly installments of interest, commencing on July 20, 2005 through and until the Maturity Date.  (Doc. #37 ¶20).  On June 20, 2007, Borrower and Community Bank of Naples, N.A. entered into a Loan Modification Agreement, extending the Maturity Date to August 20, 2007.  (Doc. #37 ¶21).  A true and correct copy of the Loan Modification Agreement is attached to the Verified Amended Complaint as Exhibit 3.

To secure payment of the 2005 Note, Borrower entered into a Mortgage (the "2005 Mortgage") on April 4, 2005, on the Land defined in the 2005 Mortgage.  (Doc. #37 ¶22).  The 2005 Mortgage was recorded on June 30, 2005, in the Official Records of Lee County, Florida at Instrument No. 6872446, OR Book 04778, Page 4530.  Id.  A true and correct copy of the 2005 Mortgage is attached to the Verified Amended Complaint as Exhibit 4.  In order to induce Community Bank of Naples, N.A. to enter into the Loan, the

Guarantors each executed and delivered a separate Unconditional and Continuing Guaranty dated June 21, 2005, to Community Bank of Naples, N.A. (Doc. #37 ¶23). True and correct copies of each Unconditional and Continuing Guaranty (collectively, the "Unconditional and Continuing Guaranties") are attached to the Verified Amended Complaint as Exhibits 5, 6, 7 and 8.

Pursuant to their respective Unconditional and Continuing Guaranty, each of the Guarantors guaranteed payment of the "Indebtedness," which includes, but is not limited to principal and interest on the Loan, collection costs and attorney's fees, and payment and performance of all Borrower's obligations under the Note and related loan documents. (Doc. #37 ¶24). The Unconditional and Continuing Guaranties provide that Plaintiff shall not be required to pursue or exhaust any of its rights or remedies against the Borrower or any collateral for the Loan before pursuing its remedies against the Guarantors. (Doc. # 37 ¶25).

As a condition of Community Bank of Naples, N.A. renewing the Loan, Borrower executed and delivered a Renewal/Re-Write/Reamortization/Rate Modification of the Note dated August 20, 2007 (the "2007 Renewal Note") in the amount of $3,965,000.00. (Doc. #37 ¶26). A true and correct copy of the 2007 Renewal Note is attached to the Verified Amended Complaint as Exhibit 9. The Renewal Note extended the Maturity Date to August 20, 2008 ("Renewal Maturity Date"). Pursuant to the 2007 Renewal Note, Borrower agreed to make consecutive monthly installments of principal and interest, commencing on September 20, 2007, through and until the Renewal Maturity Date. (Doc. #37 ¶¶27-28).

On April 12, 2008, Community Bank of Naples merged into RBC Bank (USA), pursuant to the Articles of Merger filed with the Department of the Secretary of State for North Carolina.  A true and correct copy of the Articles of Merger is attached to the Verified Amended Complaint as Exhibit 10.  By virtue of the merger, RBC Bank (USA) succeeded to all the rights and obligations of Community Bank of Naples with respect to the Loan Documents.  (Doc. #37 ¶¶29-30).

On or about December 12, 2008, RBC Bank (USA) and Borrower entered into a Change In Terms Agreement (the "2008 Change In Terms Agreement").  (Doc. #37 ¶31). The 2008 Change In Terms Agreement increased the principal amount of the Loan to $3,986,683.02 and extended the Maturity Date to December 11, 2009.  A true and correct copy of the 2008 Change In Terms Agreement is attached to the Verified Amended Complaint as Exhibit 11.   Guarantors each executed and delivered a separate Commercial Guaranty dated December 12, 2008, to RBC Bank (USA).  (Doc. #37 ¶32). True and correct copies of each Commercial Guaranty (collectively, the "2008 Commercial Guaranties") are attached to the Verified Amended Complaint as Exhibits 12, 13, 14 and 15.  Pursuant to their respective 2008 Commercial Guaranty, each of the Guarantors guaranteed payment of the "Indebtedness," which includes, but is not limited to principal and interest on the Loan, collection costs and attorney's fees, and payment and performance of all Borrower's obligations under the loan documents.  The 2008 Commercial Guaranties provide that Plaintiff shall not be required to pursue or exhaust any of its rights or remedies against the Borrower or any collateral for the Loan before pursuing its remedies against the Guarantors.  The 2008 Commercial Guaranties also provide that if Lender presently holds one or more guaranties or receives additional

guaranties from each Guarantor, Lender's rights under all guaranties shall be cumulative and the 2008 Commercial Guaranties shall not affect or invalidate any other guaranties signed by the Guarantors. (Doc. #37 ¶¶33-35).

On or about January 26, 2009, RBC Bank (USA) and Borrower entered into a Change In Terms Agreement (the "2009 Change In Terms Agreement"). The 2009 Change In Terms Agreement changed the principal amount of the Loan to $3,980,780.55 and extended the Maturity Date to December 11, 2009.  (Doc. #37 ¶36).  A true and correct copy of the 2009 Change In Terms Agreement is attached to the Verified Amended Complaint as Exhibit 16.  To secure payment of the Note, as modified, RBC Bank (USA) and Borrower entered into a Mortgage Future Advances (the "2009 Mortgage") on January 26, 2009, on the property defined in the 2005 Mortgage.  The 2009 Mortgage was recorded on March 4, 2009, in the Official Records of Lee County, Florida at Instrument No. 2009000056352.  (Doc. #37 ¶37).  A true and correct copy of the 2009 Mortgage is attached to the Verified Amended Complaint as Exhibit 17.

On or about July 21, 2010, RBC Bank (USA) and Borrower entered into a Change In Terms Agreement (the "2010 Change In Terms Agreement"). The 2010 Change In Terms Agreement extended the Maturity Date to August 11, 2010.  (Doc. #37 ¶38).  A true and correct copy of the 2010 Change In Terms Agreement is attached to the Verified Amended Complaint as Exhibit 18.  On or about October 22, 2010, RBC Bank (USA) and Borrower entered into a Modification Agreement (the "2010 Modification Agreement"). The 2010 Modification Agreement extended the Maturity Date to December 31, 2010. (Doc. #37 ¶39).  A true and correct copy of the Modification Agreement is attached to the Verified Amended Complaint as Exhibit 19.

On or about January 14, 2011, Borrower executed and delivered to RBC Bank (USA) a Loan Agreement, renewing the Loan to Borrower (the "2011 Loan Agreement"). (Doc. #37 ¶40).  A true and correct copy of the 2011 Loan Agreement is attached as to the Verified Amended Complaint as Exhibit 20.  On or about January 14, 2011, Borrower executed and delivered to RBC Bank (USA) a Commercial Promissory Note (the "2011 Note") for future advances in the amount of $3,730,781.00.  (Doc. #37 ¶41).  A true and correct copy of the 2011 Note is attached to the Verified Amended Complaint as Exhibit 21.  The 2011 Note amended, restated, and renewed the 2007 Renewal Note, as modified, and provided for the Loan to mature on January 31, 2013 (the "2011 Loan Maturity Date").  Pursuant to the 2011 Note, Borrower agreed to make consecutive monthly installments of interest, commencing on March 1, 2011, through and until the 2011 Loan Maturity Date when all amounts outstanding on the 2011 Note would be paid. (Doc. #37 ¶¶42-43).  On or about January 14, 2011, Borrower executed and delivered to RBC Bank (USA) an Amended and Restated Mortgage ("2011 Amended and Restated Mortgage").  The 2011 Amended and Restated Mortgage was recorded on February 24, 2011, in the Official Records of Lee County, Florida at Instrument No. 2011000046400. (Doc. #37 ¶44).  The 2011 Amended and Restated Mortgage amended and restated the 2009 Mortgage, and deleted the property described in the 2005 Mortgage and replaced it with a new land description ("Land or Mortgaged Property").  See Doc. #37, ¶45; Doc. #59, pp. 6-7, for land description.   A true and correct copy of the 2011 Amended and Restated Mortgage is attached as to the Verified Amended Complaint as Exhibit 22.

In order to induce RBC Bank (USA) to enter into the 2011 Loan Agreement, the Guarantors each executed and delivered a separate Single Loan Guaranty Agreement

dated January 14, 2011, to RBC Bank (USA).  True and correct copies of each Single Loan Guaranty Agreement (collectively, the "2011 Single Loan Guaranty Agreements") are attached to the Verified Amended Complaint as Exhibits 23, 24, 25 and 26.  (Doc. #37 ¶46).  Pursuant to their respective 2011 Single Loan Guaranty Agreement, each of the Guarantors guaranteed payment of the "Indebtedness," which includes, but is not limited to principal and interest on the Loan, collection costs and attorney's fees, and payment and performance of all Borrower's obligations under the loan documents.  The 2011 Single Loan Guaranty Agreements provide that Plaintiff shall not be required to pursue or exhaust any of its rights or remedies against the Borrower or any collateral for the Loan before pursuing its remedies against the Guarantors.  (Doc. #37 ¶¶47-48).

Effective March 2, 2012, RBC, was merged into PNC, with PNC as the surviving entity, pursuant to the Articles of Merger filed with the Department of the Secretary of State for North Carolina. True and correct copies of the Certificate of Merger and the certification of the Comptroller of the Currency's approval of the merger are attached to the Verified Amended Complaint as Exhibit 27.  By virtue of the merger, PNC succeeded to all the rights and obligations of RBC Bank (USA), with respect to the Loan Documents. (Doc. #37 ¶¶49-50).

Pursuant to the Loan Documents, an event of default ("Event of Default") includes Borrower's failure to pay when due any amounts required by the Loan Documents.  (Doc. #37-1, 2005 Promissory Note, p. 3, ¶5).  If an Event of Default has occurred and is continuing, the entire unpaid principal balance, any accrued interest, the prepayment premium, if any, and all other amounts payable under the Loan Documents shall at once

become due and payable at the option of Plaintiff, without prior notice to Borrower.   (Doc. #37-1, 2005 Promissory Note, p. 3, ¶6).

In this case, it is alleged that Borrower was in default under the terms of the Loan Documents by failing to make payment when due on August 1, 2012, and all payments due thereafter. (Doc. #59, Ex. A, Aff. of Kurt G. Knaus, ¶4).  Plaintiff notified Borrower of its default and accelerated the Loan by letter dated September 20, 2012.  A true and correct copy of the Default Letter is attached to the Verified Amended Complaint as Exhibit 28.  Borrower failed to cure the default.  As of December 12, 2013, Borrower owes Plaintiff on the Note the following amounts:

| | |
|---|---|
| Principal | $3,730,780.55 |
| Interest | $986,791.46 |
| Late Charges | $196,634.62 |
| TOTAL | $4,914,206.63 |
| Per Diem Interest (18.00%) | $1,865.390275 |

together with expenses, court costs, and attorneys' fees, including pre-foreclosure attorneys' fees expended in efforts to protect Plaintiffs security interest, and other sums as may be advanced by Plaintiff during the pendency of this action to protect its security interest in the Mortgaged Property, all of which Borrower is obligated to pay pursuant to the terms of the Loan Documents.  (Doc. #59, Ex. A, Aff. ¶4).

## DISCUSSION

Plaintiff argues that it is entitled that summary judgment be entered in its favor because it is the holder of the note, asserting in its Brief that it has possession of the original Note.[2]  The Note is secured by the Mortgage.  (Doc. #37, Ex. 21, p. 2).  Plaintiff

---

[2] Plaintiff asserts that it has been advised by the Clerk of Court to continue holding the original Note until the Court requests it.  (Doc. #11, n.3).

asserts that the Mortgage provides that upon default, PNC "is authorized and will have the power to foreclose [the] Mortgage through one or more suits at law, proceedings in equity or any other proceedings relating to foreclosure of mortgages or collection of indebtedness secured by a mortgage which are permissible at the time of the occurrence of the Event of Default." (Doc. #37, Ex. 22, p. 6).  In response, Defendants Orchid, Washburn, and Arnold argue that the Plaintiff has not provided satisfactory evidence that it is the owner and/or holder of the "2011 Note," which it seeks to enforce in its Motion, as required by Florida law.[3]  The Flaharty Defendants argue in response to Plaintiff's Motion that the affidavit of Kurt G. Knaus, filed in support of Plaintiff's Motion, is inadmissible hearsay lacking personal knowledge and therefore insufficient as a matter of law to support the Plaintiff's Motion and should be stricken.[4]

"To foreclose upon a promissory note, the plaintiff must be the 'holder' in order to be the real party in interest.  The 'holder' is the 'person who is in possession of a document of title or an instrument or an investment security drawn, issued or endorsed to him or to his order or to the bearer or in blank.'" Troupe v. Redner, 652 So.2d 394, 395-96 (Fla. 2d DCA 1995) (citations omitted); see Fla. Stat. § 671.201(21) (2010); Mortg. Elec. Registration Sys. v. Azize, 965 So.2d 151, 153 (Fla. 2d Dist. Ct. App. 2007) (same).  Once the plaintiff establishes that it can enforce the promissory note in a foreclosure action, it must also demonstrate that the defendant failed to pay pursuant to the note.  See Cherry v. Chase Manhattan Mortg. Corp., 190 F. Supp. 2d 1330, 1333-34 (M.D. Fla. 2002) (The

---

[3] As this Court's jurisdiction is based upon diversity of the parties in this case, the Court applies Florida law. See, e.g., Horowitch v. Diamond Aircraft Indus., Inc., 645 F.3d 1254, 1257 (11th Cir. 2011).

[4] They further assert that they have been prohibited from challenging the basis of Mr. Knaus' knowledge because of the refusal by the Plaintiff to produce documents during discovery of this matter and Plaintiff's refusal to produce Mr. Knaus for deposition since discovery has closed.

mortgagor's "failure to tender payments from the escrow account or make deposits with the court is more than just a 'technical breach' of the mortgage and note."); Smiley v. Manufactured Hous. Assocs. III Ltd. Partnership, 679 So.2d 1229, 1232 (Fla. 2d Dist. Ct. App. 1996) ("'Failure to pay goes to the heart of the agreement between the mortgagor and mortgagee, and is not a mere technical breach.'") (quoting Pezzimenti v. Cirou, 466 So.2d 274 (Fla. 2d Dist. Ct. App. 1985)).

Pursuant to Florida law, a complaint that seeks to foreclose on a mortgage or other lien on residential property must "contain affirmative allegations expressly made by the plaintiff at the time the proceeding is commenced that the plaintiff is the holder of the original note secured by the mortgage." Fla. Stat. § 702.015(2)(a).[5]  A complaint must also "allege with specificity the factual basis by which the plaintiff is a person entitled to enforce the note under s. 673.3011." Fla. Stat. § 702.015(2)(b).  "If the plaintiff is in possession of the original promissory note, the plaintiff must file under penalty of perjury a certification with the court, contemporaneously with the filing of the complaint for foreclosure, that the plaintiff is in possession of the original promissory note." Fla. Stat. § 702.015(b)(4).  Further,

> The certification must set forth the location of the note, the name and title of the individual giving the certification, the name of the person who personally verified such possession, and the time and date on which the possession was verified. Correct copies of the note and all alloges to the note must be attached to the certification. The original note and the alloges must be filed with the court before the entry of any judgment of foreclosure or judgment on the note.

---

[5] The term "original note" or "original promissory note" means the signed or executed promissory note rather than a copy thereof. Fla. Stat. § 702.015(b)(3).  The term also includes "any renewal, replacement, consolidation, or amended and restated note or instrument given in renewal, replacement, or substitution for a previous promissory note." Id.

Id.  This amendment became effective on June 7, 2013, but the legislative notes to this Act state that "[t]he Legislature finds that this act is remedial in nature and applies to all mortgages encumbering real property and all promissory notes secured by a mortgage, whether executed before, on, or after the effective date of this act."  Even though this case was filed on January 8, 2013, prior to the effective date of the Act, the Act still applies to the mortgage at issue in this case due to the remedial nature of the statute.  See State v. Kelley, 588 So.2d 595, 598 (Fla. 1st Dist. Ct. App. 1991) (noting that remedial statutes "do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, [they] do not come within . . . the general rule against retrospective operation of statutes.").

In this case, the original note – or subsequent notes – have not been filed or provided to the Court, nor has a certification been filed pursuant to Fla. Stat. § 702.015(b)(4).  Even though Plaintiff has asserted in its Brief and Amended Complaint that it is the holder and owner of the Note, this is not sufficient under Florida law. Therefore, the Court finds that the entry of summary judgment in favor of the Plaintiff is premature at this time as there is a genuine issue of material fact as to whether PNC is entitled to foreclose on the mortgage under Florida law.  Thus, judgment as a matter of law is not appropriate.

As the Court did not rely on the "Second Knaus Affidavit" (Doc. #67-1) in deciding whether summary judgment was appropriate in this matter, the Flaharty Defendants' request to strike it is denied at this time.  The Defendants may re-raise the issue with the Court if the Plaintiff attempts to use the "Second Knaus Affidavit" for any other purpose.

Accordingly, it is now

**ORDERED:**

(1) Plaintiff PNC Bank's Motion for Final Summary Judgment (Doc. #59) is

DENIED.

(2) Flaharty Defendants' Motion to Strike the "Second Knaus Affidavit" (Doc. #73)

is **DENIED without prejudice**.

**DONE** and **ORDERED** in Fort Myers, Florida this 13th day of February, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record