UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PNC BANK, NATIONAL ASSOCIATION
successor to RBC BANK (USA),

   Plaintiff,

v.                Case No: 2:13-cv-12-FtM-38CM

ORCHID GROUP INVESTMENTS,
L.L.C., a Florida limited liability
company, LYNNE W. WASHBURN,
an individual, KRISTEN FLAHARTY,
an individual, PATRICK FLAHARTY,
an individual, and JOHN P.
ARNOLD, JR., an individual,

   Defendants.
_____/

## **ORDER**[1]

This matter comes before the Court on Plaintiff PNC Bank, National Association's Renewed Motion for Final Summary Judgment (Doc. #93) filed on June 12, 2014. Defendants Orchid Investments, L.L.C., Lynne W. Washburn, and John P. Arnold, Jr. filed a Response to Plaintiff's Renewed Motion for Final Summary Judgment (Doc. #100) on June 26, 2014. Defendants Patrick Flaharty and Kristen Flaharty (the "Flaharty Defendants") filed an Opposition to Plaintiff's Renewed Motion for Final Summary Judgment and Motion to Strike Kurt Knaus Affidavit (Doc. #102) on July 3, 2014. Plaintiff

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

thereafter filed a Response to the Flaharty Defendants' Motion to Strike Knaus Affidavit (Doc. #108) on July 17, 2014.  Finally, Plaintiff filed an Unopposed Renewed Motion for Separate Trial on Defendants Kristen Flaharty and Patrick Flaherty's Crossclaim (Doc. #96) on June 18, 2014.  These three matters are thus ripe for review.

## **BACKGROUND**[2]

### I. Factual history

#### A. Original loan with Community Bank of Naples, N.A.

On June 21, 2005, Community Bank of Naples, N.A. loaned the sum of $3,965,000.00 to Defendant Orchid Investments, L.L.C. ("Defendant Orchid" or "Borrower").  (Doc. #105 at ¶ 9).  To evidence the loan, Defendant Orchid executed and delivered a promissory note ("2005 Note") to Community Bank of Naples on June 21, 2005.  (Doc. #105 at ¶ 10; Doc. #37-1 at 11-15).  Under the 2005 Note, Defendant Orchid agreed to make consecutive monthly payments of accrued interest starting on July 20, 2005, through June 20, 2007 (the "Maturity Date").  (Doc. #37-1 at 11).

To secure the 2005 Note, Defendant Orchid entered into a Mortgage and Security Agreement and Assignment of Leases and Rents (the "2005 Mortgage").  (Doc. #105 at ¶ 14; Doc. #37-1 at 19-41).  Two tracts of land served as collateral for the 2005 Mortgage. (Doc. #37-1 at 19-21, 41).  Defendant Orchid recorded the 2005 Mortgage in the Official Records of Lee County, Florida on June 30, 2005.  (Doc. #105 at ¶ 14).

On June 21, 2005, Defendants Washburn, Arnold, P. Flaharty, and K. Flaharty (collectively "Defendant Guarantors") each executed separate guaranties to Community Bank of Naples, guaranteeing payment of the indebtedness, i.e., principal and interest on

---

[2] For simplicity's sake, the Court adopts the statement of admitted facts from the parties' Amended Joint Final Pretrial Statement.  (Doc. #105).

the 2005 Note, collection costs and attorney's fees, and payment and performance of all Defendant Orchid's obligations under the 2005 Note and related loan documents. ([Doc. #37-1 at 43-89](#)).

On June 20, 2007, Defendant Orchid and Community Bank of Naples executed a Loan Modification Agreement, extending the Maturity Date until August 20, 2007. ([Doc. #37-1 at 17](#)). All other terms and conditions of the 2005 Note remained the same. ([Doc. #37-1 at 17](#)).

On August 20, 2007, Defendant Orchid executed and delivered a Renewal/Re-Write/Reamortalization/Rate Modification of the Note dated August 20, 2007 (the "2007 Renewal Note") in the amount of $3,965,000.00. ([Doc. #37-1 at 91-93](#)). The 2007 Renewal Note extended the Maturity Date to August 20, 2008. ([Doc. #37-1 at 91](#)).

B. Community Bank of Naples merges with RBC Bank (USA)

On April 10, 2008, Community Bank of Naples merged with RBC Bank (USA). ([Doc. #37-1 at 96](#)). Thereafter, on December 12, 2008, RBC Bank and Defendant Orchid entered into a "Change In Terms Agreement" to increase the principle amount of the loan to $3,986,683.02 and extend the Maturity Date to December 11, 2009. ([Doc. #37-1 at 99-100](#)). Defendant Guarantors also executed new guarantees to RBC Bank, again guaranteeing payment of the indebtedness. ([Doc. #37-1 at 2-15, 102-05](#)).

On January 26, 2009, RBC Bank and Defendant Orchid entered into a second "Change in Terms Agreement," decreasing the principal amount of the loan to $3,980,780.55 and extending the Maturity Date to December 11, 2009. ([Doc. #37-2 at 17-19](#)). To secure payment of the 2005 Note, as modified, RBC Bank and Defendant Orchid entered into a Mortgage Future Advances (the "2009 Mortgage") on January 26,

2009. (Doc. #37-2 at 21-32). The 2009 Mortgage was recorded on March 4, 2009, in the Official Records of Lee County, Florida. (Doc. #37-2 at 21-32).

In July 2010, RBC Bank and Defendant Orchid entered into a third "Change In Terms Agreement," but this time only extending the Maturity Date to August 11, 2010. (Doc. #37-2 at 34-37). On October 22, 2010, RBC Bank and Defendant Orchid again extended the Maturity Date to December 31, 2010. (Doc. #37-2 at 39-46).

On January 14, 2011, RBC Bank renewed the loan to Defendant Orchid. (Doc. #37-2 at 48-50). On that same date, Defendant Orchid executed and delivered to RBC Bank a Commercial Promissory Note (the "2011 Note") in the amount of $3,730,781.00. (Doc. #37-2 at 52-55). The 2011 Note amended, restated, and renewed the 2007 Renewal Note, as modified, and provided for the loan to mature on January 31, 2013. (Doc. #105 at ¶ 24). Pursuant to the 2011 Note, Defendant Orchid agreed to make consecutive monthly installments of interest, commencing on March 1, 2011 through January 31, 2013, at which time all outstanding amounts on the 2011 Note were to be due. (Doc. #37-2 at 53; Doc. #114 at ¶ 11). In connection with the 2011 Note's closing, Defendant Orchid paid $250,000.00 to reduce the principal owed on the 2007 Note and paid $200,000.00 to establish an interest reserve. (Doc. #114 at ¶ 16).

On January 14, 2011, Defendant Orchid also executed and delivered to RBC Bank an Amended and Restated Mortgage ("2011 Mortgage"), which was recorded on February 24, 2011, in the Official Records of Lee County, Florida. (Doc. #37-2 at 57-70). The 2011 Mortgage amended and restated the 2009 Mortgage, and it deleted the property described in the 2005 Mortgage and replaced it with different real property, namely 20 acres in Cape Coral, Florida located on the Northeast corner of Pine Island Road and

Corbett Road ("2011 Mortgaged Property").  (Doc. #37 at ¶ 45; Doc. #37-2 at 53, 70). Moreover, to induce RBC Bank to enter into the 2011 Loan Agreement, Defendant Guarantors each executed separate Single Loan Guaranty Agreements on January 14, 2011.  (Doc. #37-2 at 72-90).  Importantly, the 2011 Note, 2011 Loan Agreement, 2011 Mortgage, and Single Loan Guaranty Agreements superseded the prior loan documents.

   C.  <u>RBC Bank merges with Plaintiff</u>

Effective March 2, 2012, RBC Bank merged with Plaintiff.  (Doc. #37-2 at 92-93). Plaintiff was the surviving entity.  (Doc. #114 at ¶ 16).  As such, Plaintiff owns and holds all legal and beneficial interest in the 2011 Note, 2011 Mortgage, the 2011 Guaranties, and other loan documents.  (Doc. #105 at 12-13; Doc. #114 at ¶ 21).

Following the merger, Plaintiff took custody of RBC Bank's books and records, including those records regarding Defendant Orchid's loan.  (Doc. #114 at ¶ 19).  RBC Bank used a computer software system, Commercial Loan System ("CLS"), to maintain its loan history servicing records.  (Doc. #114 at ¶ 17).  Sometime after the merger, Plaintiff converted RBC Bank's records to its own computer system called Advanced Commercial Banking System ("ACBS").  (Doc. #114 at ¶ 20).

Defendant Orchid defaulted under the terms of the 2011 Note and 2011 Mortgage by failing to make payment when due on August 1, 2012.  (Doc. #114 at ¶ 22).  Plaintiff sent a demand letter to Defendant Orchid and Defendant Guarantors on September 20, 2012, accelerating and demanding immediate payment of all amounts owed under the 2011 Note.  (Doc. #37-2 at 95-96).  Defendant Orchid failed to cure the default and has not made payments due and owing under the 2011 Note since July 2012.  (Doc. #114 at

¶ 24).  Additionally, Defendant Guarantors have failed to make any payments to Plaintiff pursuant to the 2011 Guaranties.  (Doc. #114 at ¶ 25).

## II.  Instant action

On January 1, 2013, Plaintiff commenced this action to foreclose on the 2011 Mortgaged Property.  (Doc. #1).  Plaintiff thereafter filed a Verified Amended Complaint to Foreclose Mortgage and for Other Relief on July 2, 2013.  (Doc. #37).  Plaintiff's claims are mortgage foreclosure against all Defendants (Count I); foreclosure of security interest in leases and rents against all Defendants (Count II); breach of note against Defendant Orchid (Count III); and breach of guaranties against Defendants Washburn, Arnold, K. Flaharty, and P. Flaharty (Counts IV-VII).  Defendants timely answered the Verified Amended Complaint.  (Doc. #38, Doc. #39, Doc. #40, Doc. #44).

On August 15, 2013, the Flaharty Defendants brought two cross-claims against Defendants Washburn and Arnold for contribution.  (Doc. #44 at 15-18).  The Flaharty Defendants allege they "have or will have contributed more than their proportionate share of the obligation incurred by the borrower, [Defendant] Orchid, either by settlement, judgment or otherwise, with the lender, [Plaintiff] PNC Bank," and Defendants Washburn and Arnold "should be required to contribute a proportionate share of the money paid by the Flahartys to [Plaintiff] on the obligation incurred by the borrower, [Defendant] Orchid."  (Doc. #44 at 17-18).

On December 13, 2013, Plaintiff filed a motion for summary judgment (Doc. #59), which the Court denied on February 13, 2014.  (Doc. #78).  The Court then held a final pretrial conference on February 21, 2014. (Doc. #84).  Based on its discussion with the parties, the Court extended discovery, dispositive motions, and pretrial filings, and the

trial term. (Doc. #88). The deadline for the additional discovery has now expired, and Plaintiff has filed the pending Renewed Motion for Summary Judgment. (Doc. #93). Plaintiff seeks a final judgment of foreclosure against all Defendants and an award of damages.

## DISCUSSION

### I. Plaintiff's Renewed Motion for Summary Judgment

#### A. Standard of review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, an issue of fact is material if it may affect the outcome of the suit under governing law. Id.

The moving party bears the burden of showing the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In deciding whether the moving party has met this initial burden, courts must review the record and draw all reasonable inferences from the record in a light most favorable to the non-moving party. See Whatley v. CNA Ins. Co., 189 F.3d 1310, 1313 (11th Cir. 1999). Once the court determines the moving party has met this burden, the burden then shifts to the non-moving party to present specific facts showing a genuine issue of fact exists that precludes summary judgment. See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." Demyan

v. Sun Life Assurance Co. of Can., 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) (citing Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991)). Failure to show sufficient evidence as to any essential element is fatal to the claim and the court should grant summary judgment. See Celotex, 477 U.S. at 322-23. Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied. See Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1532 (11th Cir. 1992).

B. Analysis

To prevail on Plaintiff's claim for a judgment of foreclosure and an award of damages, Plaintiff must establish (1) it holds and is entitled to enforce the 2011 Note and 2011 Guaranties; (2) Defendants are liable to Plaintiff on the 2011 Note and 2011 Guaranties; and (3) the amounts due and owing on the 2011 Note. The parties neither dispute Plaintiff's enforceability of the 2011 Note and 2011 Guaranties nor Defendants' liability.[3] Accordingly, the Court finds, as a matter of law, Defendants are liable to Plaintiff on Counts I through VII of the Amended Verified Complaint.[4]

Turning to damages, it is uncontested the principal balance on the 2011 Note remains unpaid and interest has accrued from July 1, 2012 to the date of this Order. (Doc. #109 at 1-2). Defendants, however, argue that Plaintiff cannot establish by admissible

---

[3] Defendants concede (1) the 2011 Note, 2011 Mortgage, and 2011 Guaranties are valid and enforceable; (2) Plaintiff owns and holds the 2011 Note; (3) Defendant Guarantors signed the 2011 Note and 2011 Guaranties; (3) Defendant Orchid defaulted on its obligations under the 2011 Note and thus breached the terms of the 2011 Note; (4) Plaintiff is entitled to foreclose the 2011 Mortgage due to Defendant Orchid breaching the 2011 Note; and (5) Defendant Guarantors breached their obligations under the 2011 Guaranties by failing to make payment of the debt when Defendant Orchid failed to do so. (Doc. #102; Doc. #105).

[4] In Plaintiff's Reply brief, it "waive[d] any claim to late charges and will not seek late charges by summary judgment or at trial" and requested a post-judgment determination of Plaintiff's entitlement to attorney's fees and costs. (Doc. #109 at 3-7). Based on Plaintiff's unequivocal affirmations to the Court, no material issues of fact exist as to these issues to preclude summary judgment.

evidence the amounts due on the 2011 Note, and thus Plaintiff is not entitled to an award of damages on summary judgment. (Doc. #114 at 2).

Plaintiff proffers that Defendants are jointly and severally liable for $5,010,266.51 due on Defendant Orchid's loan. (Doc. #105 at 15). To establish this amount, Plaintiff attach the Affidavit of Kurt G. Knaus, its senior asset manager and vice president ("Knaus Affidavit"), to the Renewed Motion for Summary Judgment. (Doc. #93-1). Attached to the Knaus Affidavit are, among other things, (1) RBC Bank's CLS Formatted Master Note Print Report dated March 4, 2012 ("RBC Records"), which shows the payment history of Defendant Orchid's loan while RBC Bank owned the promissory note, and (2) Plaintiff's ACBS Loan Reamortization File Request Report dated January 10, 2014 ("Plaintiff Records"), which shows the payment history of Defendant Orchid's loan since Plaintiff acquired RBC Bank. (Doc. #93-1 at 69-87).

According to the Flaharty Defendants, the Knaus Affidavit fails to meet the requirements of Rule 56(c)(4) of the Federal Rules of Civil Procedure. Rule 56(c)(4) provides when affidavits are used to support a summary judgment motion, they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Flaharty Defendants aver that the Knaus Affidavit and the attached records do not meet the admissibility requirements for business records under Federal Rule of Evidence 803(6) because Knaus lacks the requisite personal knowledge on the

RBC Records and Plaintiff Records to qualify him as a "custodian or other qualified witness."[5]  (Doc. #102 at 7-8).

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Hearsay is inadmissible unless it falls within an enumerated exception.  One such exception is for business records of a regularly conducted activity.  See Fed. R. Evid. 803(6).  Rule 803(6) provides, in pertinent part, that

> [a] record of an act, event, condition, opinion, or diagnosis [is admissible] if: (A) the records was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6); see also United States v. Arias-Izquierdo, 449 F.3d 1168, 1183 (11th Cir. 2006) ("The touchstone of admissibility under Rule 803(6) is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence.").

As indicated by the text above, Rule 803(6) permits the introduction of business records through a custodian or qualified witness.  To be admitted on such grounds, "'the person who actually prepared the documents need not have testified so long as other circumstantial evidence and testimony suggest[s] [the documents] trustworthiness.'"  Itel Capital Corp. v. Cups Coal Co., 707 F.2d 1253, 1259 (11th Cir. 1983) (quoting United

---

[5] As an aside, documentary evidence found to be admissible under the business records exception to the hearsay rule must also be authenticated under Rule 901 of the Federal Rules of Evidence.  The Flaharty Defendants, however, do no object to the authenticity of the Knaus Affidavit and attached records.

10

States v. Parker, 749 F.2d 628, 633 (11th Cir. 1984)). "'It is not essential that the offering witness be the recorder or even be certain of who recorded the item. It is sufficient that the witness be able to identify the record as authentic and specify that it was made and preserved in the regular course of business.'" United States v. Langford, 647 F.3d 1309, 1327 (11th Cir. 2011) (quoting United States v. Atchley, 699 F.2d 1055, 1058 (11th Cir. 1983)).

In this case, the Court finds, for the following reasons, the Knaus Affidavit is based on personal knowledge from Knaus' review of Plaintiff's business records and it sets forth a sufficient basis for admitting those records under Federal Rule of Evidence 803(6).

    *1. RBC Records*

Since RBC Bank never employed Knaus and Knaus did not affiliate with RBC Bank, the Flaharty Defendants argue he lacks the requisite personal knowledge to affirm the RBC Records meet Rule 803(6)'s admissibility requirements. (Doc. #102 at 7). Although attractive at first blush, a closer review of this argument reveals it contravenes clear Eleventh Circuit law.

In United States v. Parker, the Eleventh Circuit stated business records which qualify under Federal Rule of Evidence 803(6) need not "be prepared by the business which has custody of them." 749 F.2d 628, 633 (11th Cir. 1984). The court noted, "[t]hat the witness[es] and [their] compan[ies] had neither prepared the [documents] nor had first-hand knowledge of the preparation does not contravene Rule 803(6)." Parker, 749 F.2d at 633. Drawing from Parker, the Northern District of Alabama recently held "when business records pass from a predecessor entity to a successor entity under a merger or receivership, the successor entity is able to authenticate the business records of its

predecessor." Phillips v. Mortg. Elec. Registration Sys., Inc., No. 5:09-cv-2507, 2013 WL 1498956, at *2 (N.D. Ala. Apr. 5, 2013). The district court explained

> [t]his assessment of FRE 803(6) is based on the practical consideration that "it would be extremely difficult for a successor bank to recover debt owed to a failed bank, . . . , since the custodian of the failed bank's records may no longer be able or willing to participate in efforts to recover debts owed to the bank that went into receivership. Such a standard would inhibit the FDIC in its receivership role when it must find solvent banks to take over insolvent banks."

Id. (quoting FirstMerit Bank, N.A. v. Balin, No. 11 C 8809, 2012 WL 4017948, at *4 (N.D. Ill. Sept. 11, 2012)). As such, the district court denied a motion to strike an affidavit of a bank representative even though the representative relied on records of predecessor banks with whom he had "no apparent employment or agency relationship." Id. (citing U.S. Bank Nat. Ass'n v. Am. Screw & Rivet Corp., No. 09 C 7312, 2010 WL 3172772, at *3 (N.D. Ill. Aug. 10, 2010) (holding a witness from successor bank could authenticate records of bank that went into receivership); Krawczyk v. Centurion Capital Corp., No. 06–C–6273, 2009 WL 395458, at *5 (N.D. Ill. 2009) (indicating a bank can rely on its predecessor's business records and that "[u]ltimately, the primary emphasis of Rule 803(6) is on the reliability or trustworthiness of the records sought to be introduced")).

Under the case authority discussed above, Knaus is qualified to show the RBC Records meet the admissibility prerequisites under Rule 803(6), even though he was neither employed by nor affiliated with RBC Bank. See also Certusbank, N.A. v. MLJJ Props., LLC, No. 3:12-cv-46, 2013 WL 4009658, at *3 (M.D. Ga. Aug. 5, 2013) (finding a predecessor bank's records of the defendant's loan fell under the business records exception so that the plaintiff properly relied on these records to establish the amount the defendants owed under a promissory note). As the Knaus Affidavit reflects, the RBC

Records "are regularly and routinely relied upon by [Plaintiff] in its administration of loans that [Plaintiff] acquired as a result of its merger with RBC when it is necessary to understand the history of a loan prior to [Plaintiff] PNC's acquisition of RBC." (Doc. #93-1 at ¶ 36). Simply put, the RBC Records are "[Plaintiff] PNC records now." (Knaus Dep. 112:23-113:1). Since the RBC Records are part of Plaintiff's Records with respect to Defendant Orchid's loan, Knaus can testify to them based upon his review of those records. See United States v. Jakobetz, 955 F.2d 786, 801 (2nd Cir. 1992) (stating that "[e]ven if the document is originally created by another entity, its creator need not testify when the document has been incorporated into the business records of the testifying entity").

The authorities the Flaharty Defendants cite in opposition are unpersuasive. A pertinent example is Glarum v. LaSalle Bank N.A., 83 So.3d 780 (Fla. 4th DCA 2011). In Glarum, a bank brought a mortgage foreclosure action against a borrower. To prove the amount due on the mortgage, the bank offered the affidavit of a "specialist" who worked at an independent loan servicer company. 83 So.3d at 782. The borrower, however, cited to the specialist's deposition to raise a material issue of fact regarding the amount due. Id. Specifically, the borrower pointed to the specialist's testimony in which the specialist stated he determined the amount due from his company's computer system, although he did not know who entered the data and could not verify the entries were correct at the time they were made. Id. at 782. He also relied in part on data retrieved from a prior servicer of the borrower's loan. Id. The appellate court found the specialist's affidavit to be inadmissible hearsay because he "did not know who, how, or when the data entries were made into [his loan servicer's] computer system" and "[h]e could not state if

13

the records were made in the regular course of business." Id. Glarum is plainly distinguishable. The affiant in Glarum was employed by an outside company, which is not the case here. Knaus is Plaintiff's vice president and he directly participated in Plaintiff's audit of the RBC Bank records. Additionally, the appellate court in Glarum stated, which the Flaharty Defendants conveniently omit, "[w]e stress that this case stands alone and its outcome could very well have been different had the affiant's testimony demonstrated that he knew the simple basics" of Florida's version of the business records exception to the hearsay rule. 83 So.3d at 783 n.3.

In short, Knaus testified (1) the RBC Records were printed and maintained in Plaintiff's files; (2) he is "familiar with and ha[s] reviewed servicing history printouts from various computerized loan systems"; and (3) he is familiar with servicing records from RBC Bank's system when Plaintiff acquired RBC Bank. (Doc. #93-1 at ¶¶ 29-34, 38). The Court finds no record evidence, and Defendants do not point to any, that the RBC Records are untrustworthy. Thus, the Flaharty Defendants' argument as to the Knaus Affidavit and the RBC Records are wholly without merit.[6]

Accordingly, based on the Eleventh Circuit's clear precedent, the RBC Records are business records properly considered under Federal Rule of Evidence 803(6) and Knaus is a proper witness through which the RBC Records may be introduced for the Court's consideration on summary judgment.

---

[6] Defendants Orchid, Arnold, and Washburn also oppose summary judgment, in part, on the ground that "handwritten notes" appear on a RBC Bank record for Defendant Orchid's loan indicate errors in calculations. (Doc. #100 at 3). The record forming the basis of this argument pertains to a 2008 printout of a servicing history of Community Bank of Naples. (Doc. #109 at 3 (citing Doc. #92-1 at 171-73)). As Plaintiff aptly points out, this issue is irrelevant because, when Defendants signed the new loan documents in January 2011, they agreed to the outstanding principal balance at that time, as is set forth on the face of the 2011 Note and 2011 Guaranties. (Doc. #93-1 at 27, 49).

*2. Plaintiff Records*

Next, the Flaharty Defendants present a twofold challenge to the validity of Plaintiff Records. They initially argue the only evidence related to Defendant Orchid's loan from March 2012 to the present is inadmissible hearsay because the Knaus Affidavit does not establish who created Plaintiff Records, when they were created, whether Plaintiff kept them in the course of regularly conducted business activity, or whether it was Plaintiff's regular practice to create such records. (Doc. #102 at 11-12; Knaus Dep. 95:4-12). The Court disagrees. Knaus' affirmations are made based on his personal knowledge or his review of Plaintiff Records, including the promissory notes, mortgage, mortgage modifications, loan agreements, and guaranty agreements executed by Defendants. (Doc. #93-1 at ¶ 10). Furthermore, Knaus explains that loan administrators who report to him post customers' payments and other transactions on ACBS at or about the time Plaintiff receives those payments. (Doc. #93-1 at ¶¶ 36, 40-41). From there, he testifies that ACBS automatically tracks account balances, charged interest, and payments posted, he has access to servicing history reports ACBS creates, and he has the authority to make corrections to those reports. (Doc. #93-1 at ¶¶ 37-38, 40). As such, Plaintiff regularly uses the records maintained in ACBS to manage its commercial loans. (Doc. #93-1 at ¶ 41). The Knaus Affidavit clearly establishes Knaus' personal knowledge of how Plaintiff's Records are maintained on a regular basis and his review of Plaintiff's Records as they pertain to Defendant Orchid's loan, all of which is acceptable for purposes of Federal Rules of Evidence 803(6).

Next, the Flaharty Defendants claim that genuine questions of material fact exist regarding the accuracy of the evidence related to Defendant Orchid's loan from March

2012 to the present. The Flaharty Defendants rely on Knaus' deposition testimony in which he states the balances shown on Plaintiff Records as of January 10, 2014 were incorrect. (Doc. #102 at 13 (citing Knaus Dep. 102:16-18)). From the Flaharty Defendants' isolated perspective, Knaus indicated a different report would need to be run in order to arrive at the correct amount due and no such report had been run at the time of his deposition. (Doc. #102 at 13-14 (citing Knaus Dep. 102:19-24)). The Flaharty Defendants, however, misconstrue Knaus' testimony. At the time of the report dated January 10, 2014, the interest rate used in ACBS was the contract rate of four percent (4%), and not the default interest rate of eighteen percent (18%). As Knaus testified in his deposition, he has a regular practice of calculating by hand the default rate interest owed after a customer defaults on a loan. (Doc. #92-1 at 102-03).

Accordingly, Plaintiff Records are business records properly considered under Federal Rule of Evidence 803(6) and Knaus is a proper witness through which those records may be introduced.

Beyond challenging the admissibility of the Knaus affidavit, Defendants do not otherwise dispute the unpaid principal and interest due on the 2011 Note and Guaranties. For instance, Defendants do not argue they made any payments on the 2011 Note that are not reflected in Plaintiff Records or that Plaintiff misapplied any such payment to the wrong account. Plaintiff, therefore, is entitled to summary judgment on the issue of damages.

Accordingly, Defendants are jointly and severally liable to Plaintiff for the following amounts:

| Principle | $3,730,780.55 |
|---|---|
| Interest | $1,279,485.96 |
| **TOTAL** | **$5,010,266.51** |

This total amount of $5,010,266.51 is together with prejudgment interest in the amount of $1,865.39 per day from June 11, 2014 through the date of final judgment as well as expenses, court costs, and attorneys' fees to be determined post-judgment.

## II. Court's Order dated February 13, 2014

The Court takes this opportunity to clarify its Order dated February 13, 2014, (Doc. #78), denying Plaintiff's first motion for summary judgment. The Court found Plaintiff's motion premature, as Plaintiff had neither filed the original or subsequent promissory notes at issue in this case nor provided a certification that it possessed the original promissory note. (Doc. #78 at 13). In reaching its conclusion, the Court cited to Florida Statute § 702.015 (2013). Plaintiff has since challenged the Court's reliance on § 702.015. (Doc. #93).

Section 702.015 "applies to cases filed on or after July 1, 2013." Fla. Stat. § 702.015, Note A. Plaintiff commenced this action on January 8, 2013, (Doc. #1), but filed the Amended Verified Complaint, (Doc. #37), the operative pleading in this case, on July 2, 2013. Nevertheless, the Court agrees with Plaintiff that § 702.015 does not apply because this case was commenced before § 702.015 became effective. Also, to the extent the Court specifically cited to § 702.015(2) in its Order, (Doc. #78), Plaintiff correctly points out that § 702.015(2) applies to residential mortgage loans, not commercial mortgage loans as is the case here.

17

Furthermore, the Court cited to § 702.015(4), which pertains to promissory notes.

Section 702.015(4) reads

> [i]f the plaintiff is in possession of the original promissory note, the plaintiff must file under penalty of perjury a certification with the court, contemporaneously with the filing of the complaint for foreclosure, that the plaintiff is in possession of the original promissory note. The certification must set forth the location of the note, the name and title of the individual giving the certification, the name of the person who personally verified such possession, and the time and date on which the possession was verified. Correct copies of the note and all allonges to the note must be attached to the certification. The original note and the allonges must be filed with the court before the entry of any judgment of foreclosure or judgment on the note.

Fla. Stat. § 702.015(4). Unlike § 702.015(2), which applies to residential mortgages, the Florida Legislature did not delineate that § 702.015(4) applies only to promissory notes for residential properties. Additionally, regardless of the effective date of § 702.015, the requirement that an original promissory note be filed before the court can enter judgment on the note has long been the law in Florida. See W.H. Downing v. First National Bank of Lake City, 81 So. 2d 486, 488 (Fla. 1955) (requiring production of only the original promissory note prior to the entry of a decree of foreclosure).

### III. Unopposed Renewed Motion for Separate Trial on Defendants Kristen Flaharty and Patrick Flaherty's Crossclaim

On June 18, 2014, Plaintiff filed an Unopposed Renewed Motion for Separate Trial on Defendants Kristen Flaharty and Patrick Flaherty's Crossclaim (Doc. #96). As previously stated, the Flaharty Defendants alleged two cross-claims against Defendants Washburn and Arnold for contribution. (Doc. #44). At the final pretrial conference/status conference the undersigned held on August 1, 2014, the Flaharty Defendants conceded the cross-claims are premature at this time. Defendants Washburn and Arnold did not

object to the Flaharty Defendants' concession. In addition, the Flaharty Defendants noted, and the Court agrees, the contribution cross-claims are better left for the appropriate Florida state court to resolve, as the cross-claimants and cross-defendants are non-diverse parties.

Accordingly, it is now

**ORDERED:**

(1) Plaintiff PNC Bank, National Association's Renewed Motion for Summary Judgment ([Doc. #93](Doc. #93)) is **GRANTED**.

   a. Plaintiff is awarded damages against Defendants, jointly and severally, in the form of unpaid principal and interest under the 2011 Promissory Note and the 2011 Commercial Guaranties in the amount of **$5,010,266.51** together with prejudgment interest in the amount of $1,865.39 per day from June 11, 2014 through the date of final judgment as well as expenses, court costs, and attorneys' fees to be determined post-judgment.

   b. Plaintiff shall file a proposed order on entry of final judgment of foreclosure in favor of Plaintiff and against Defendants on or before **August 8, 2014**.

(2) An order to conduct a foreclosure sale of the real property encumbered by the mortgage, generally referenced as twenty (20) acres in Cape Coral, Florida located on the Northeast corner of Pine Island Road and Corbett Road, is appropriate. Thus, the parties shall file a motion for appointment of master to conduct foreclosure sale on or before **August 15, 2014**.

(3) The Clerk of the Court shall maintain the three (3) promissory notes Plaintiff surrendered to the Court on or about July 25, 2014, with the finance records pending cancellation.

(4) Defendants Kristen Flaharty and Patrick Flaharty's Motion to Strike Kurt Knaus Affidavit ([Doc. #102](Doc. #102)) is **DENIED**.

(5) Plaintiff's Unopposed Renewed Motion for Separate Trial on Defendants Kristen Flaharty and Patrick Flaherty's Crossclaim ([Doc. #96](Doc. #96)) is **DENIED as moot**.

(6) Given the parties' statements at the final pretrial conference held before the undersigned on August 1, 2014, the parties shall advise the Court as to the status of Defendants Kristen Flaharty and Patrick Flaharty's cross-claims against Defendants Lynne Washburn and John Arnold, Jr. within **thirty (30) days** from the entry of final judgment.

(7) Defendants Kristen Flaharty and Patrick Flaharty's Motion in Limine ([Doc. #110](Doc. #110)) is **DENIED as moot.**

**DONE** and **ORDERED** in Fort Myers, Florida this 6th day of August, 2014.

*SHERI POLSTER CHAPPELL*
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record